NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0364n.06

No. 13-3947

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CLEOPÂTRE KUIDJA KUIDJA, | ) | **FILED** |
| | ) | May 14, 2014 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM |
| | ) | THE UNITED STATES BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: BOGGS and CLAY, Circuit Judges, and COHN, District Judge.[*]

BOGGS, Circuit Judge. Cleopâtre Kuidja Kuidja,[1] a native and citizen of Cameroon, petitions for review of a July 30, 2013, decision by the Board of Immigration Appeals (BIA) dismissing her appeal from an adverse decision by an immigration judge (IJ). The IJ's decision denied Kuidja's applications for asylum, withholding of removal, and protection under the Convention Against Torture, and it ordered her removal from the United States to Cameroon. Because the IJ's denial of Kuidja's applications was based on substantial evidence, we affirm the BIA's dismissal of Kuidja's appeal.

---

[*] The Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

[1] We spell and accent Kuidja's name as it appears handwritten on her original asylum application. Six of Kuidja's high-school transcripts accent her first name as "Cléopâtre," but because Kuidja omits the *accent aigu* in handwriting her own name, we employ that form.

1

# I

Kuidja, a Cameroonian national, entered the United States on July 22, 2005, as a nonimmigrant visitor for pleasure (B-2 visa), with authorization to remain until January 21, 2006. She failed to depart the United States when her visa expired.

On February 21, 2006, Kuidja applied for asylum. On March 29, 2006, an asylum officer interviewed Kuidja regarding her application. Kuidja testified that she suffered persecution in Cameroon based on her involvement with the Social Democratic Front (SDF), an opposition political party. The asylum officer determined that any harm that Kuidja suffered in Cameroon was not on account of her political opinion. The officer concluded that Kuidja was therefore ineligible for asylum and referred its assessment to an IJ.

On April 24, 2006, the United States charged that Kuidja was subject to removal under 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who has remained in the United States for a time longer than permitted.

On May 30, 2006, Kuidja, represented by counsel, appeared before the IJ and conceded removability. Kuidja presented her application for asylum, withholding of removal, and protection under the Convention Against Torture, and her attorney made twelve corrections to the application in open court. On July 19 and 27, 2006, the IJ held a merits hearing on Kuidja's application.[2] Kuidja confirmed to the IJ that she had reviewed her application "line by line, and word for word." Kuidja proceeded to make a series of changes to her application in open court, and she re-signed her application under oath. Kuidja testified in support of her application, as did Ida Komguem Tapchom, a Cameroonian national who had been granted asylum in the United States.

---

[2] At each hearing, the court provided a French interpreter.

On July 27, 2006, the IJ denied Kuidja's application and ordered her removal. The court's primary reason for denying her application was its determination that Kuidja was not credible and that her application was materially inconsistent with her testimony. The IJ analyzed Kuidja's testimony and application at great length and detailed numerous ways in which Kuidja testified inconsistently in material ways. The IJ determined that Kuidja submitted at least one fraudulent document and that Kuidja could not demonstrate any affiliation with the Social Democratic Front.

On August 3, 2006, Kuidja appealed to the BIA. On August 11, 2008, the BIA adopted and affirmed the IJ's decision and dismissed Kuidja's appeal. The BIA found no error in the IJ's adverse credibility assessment. It noted, for example, that the IJ expressed concern over Kuidja's failure to mention an alleged November 2004 arrest in her asylum application or in her statements to the asylum officer. Kuidja had testified about this arrest during her merits hearing. The BIA found it "significant" that Kuidja did not produce any evidence indicating that she attempted to have her SDF membership verified.

On September 11, 2008, Kuidja petitioned this court for review of the BIA order. Two months later, on November 10, 2008, Kuidja moved the BIA to reopen her case, based on newly obtained evidence from Cameroon purportedly verifying her membership in the SDF. On April 24, 2009, the BIA granted Kuidja's petition to reopen her case and remanded the record to the IJ for further proceedings.

On May 26, 2009, the IJ held a removal hearing following the BIA's remand. Kuidja, through counsel, indicated that she would file a new application for asylum. On August 18, 2009, Kuidja filed her second asylum application with the IJ, based on new evidence that she was affiliated with the SDF. On September 3, 2009, the IJ held a merits hearing on Kuidja's

3

second application, which it construed as supplementing the previously denied application. Kuidja confirmed to the IJ that she reviewed her application "line by line and word for word in English," and she confirmed that she was fluent in English. Kuidja made several changes to her application in open court, including a change regarding the number of times she escaped from prison in Cameroon. Kuidja then re-signed her second application under oath.[3] At this hearing, Kuidja presented evidence purportedly authenticating several of her SDF membership cards. She testified that her first asylum application erroneously omitted mention of one of her arrests, one in November 2004. Kuidja's current testimony was that she was imprisoned on three separate occasions in Cameroon.

Because Kuidja's immigration case had been reopened, on November 29, 2009, this court granted the government's unopposed motion to dismiss Kuidja's pending appeal in federal court. *See Kuidja v. Holder*, No. 08-4117 (6th Cir. Nov. 2, 2009) (order).

The merits hearing continued on March 11, 2010.[4] Arthur Hale, Kuidja's former attorney, testified as to the chain of custody of Kuidja's newly authenticated SDF membership cards. Hale testified that he mailed five of Kuidja's SDF membership cards to Cameroon for authentication. Hale testified that the authenticated SDF cards that were returned from Cameroon matched the certified color copies of the membership cards in his own records. Hale also testified that he mailed the SDF membership cards to an address provided to him by Kuidja rather than to the address of the SDF national secretariat. Hale further testified, in response to questioning by the IJ, that the letter from the SDF purportedly authenticating the membership

---

[3] At the September 3, 2009, hearing, although Kuidja stated that she was now fluent in English, the IJ, apparently out of an abundance of caution, instructed Kuidja to testify only in her native language of French and only to respond to questions after their translation into French.
[4] The IJ again asked Kuidja to communicate exclusively in French.

cards misspelled the word "exécutif" in its letterhead.  Hale ultimately acknowledged that he could not authenticate the materials he received from Cameroon.

The government also cross-examined Kuidja about the number of times she was imprisoned in Cameroon.  In response to the government's question about the number of times she was imprisoned, Kuidja responded: "If I'm not wrong, four times."  Kuidja testified that her first asylum application stated that she was imprisoned twice.  Kuidja speculated that it was just a "typing error" that the name of the SDF on her membership cards was spelled "démocrate" instead of "démocratique."  The United States asked Kuidja why the French word for "democratic" was spelled differently on her own membership cards than on the sample membership cards that she had previously entered into the record.  Kuidja responded: "Keep in mind that Cameroon is a bilingual country, and people speak and write both in French and in English."  The government asked Kuidja to explain why her membership cards did not bear the signatures of the national chairman and the treasurer general, consistent with guidelines provided to the American ambassador to Cameroon by the SDF Secretary General.  Kuidja responded that "they sometimes reuse old cards to make new ones."

Additionally, the government asked Kuidja to explain why her asylum application stated that a May 3, 2005, protest as Douala was peaceful but that an article submitted by Kuidja indicated that forty-five students were arrested that day.  Kuidja testified that she did not observe any arrests, and she speculated that the article might refer to a different demonstration.  The government proceeded to cross-examine Kuidja about what it perceived to be numerous other inconsistencies among her asylum applications and testimony.

The IJ did not issue a decision for over two years.  On October 5, 2012, the IJ denied Kuidja's application for asylum and withholding of removal and ordered her removal to

5

Cameroon. The IJ concluded that Kuidja's SDF membership cards were not legitimate and were, in fact, fraudulent. The IJ analyzed the documentation from Cameroon purporting to authenticate Kuidja's SDF membership and concluded that it was unreliable. It noted, for example, that the documentation referred to Kuidja at one point as a male. The IJ thoroughly outlined numerous inconsistencies in Kuidja's testimony. The court concluded that Kuidja had "torpedoe[d] her credibility." "The bottom line," it concluded, "is that [Kuidja's] credibility has been detracted from, rather than enhanced, and again, the [c]ourt finds that she is not credible, [and] nothing she says has been proven to be true."

On July 30, 2013, the BIA, noting "the lengthy procedural history of this case," dismissed Kuidja's appeal of the IJ's order. The BIA concluded that the IJ's adverse credibility finding was not clearly erroneous. The BIA held that in light of Kuidja's lack of credibility, the IJ did not err in denying her applications for asylum and withholding of removal. Specifically, the BIA noted that Kuidja did not address the IJ's finding that she submitted a fraudulent document in order to enhance her asylum claim. On August 16, 2013, Kuidja petitioned this court for review of the BIA's July 30, 2013 decision and of the IJ's October 5, 2012, decision.

II

Where the BIA adds its own comments to the decision of an IJ, rather than merely adopting the IJ's reasoning as it stands, we review the decision of the IJ alongside the comments made by the BIA. *See Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005).

We review the IJ's factual determinations, including credibility assessments, under a substantial-evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004). This highly deferential standard permits reversal only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In other words, we reverse

6

only when the record "not only supports a contrary conclusion, but indeed *compels* it." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). We may not reverse simply because we are convinced that we would have decided the case differently. *Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005).

## III

The BIA's dismissal of Kuidja's appeal is supported by substantial evidence because the only evidence provided by Kuidja was her own non-credible testimony and uncorroborated documents. The IJ found (and the BIA agreed) that Kuidja was not credible. The BIA noted, for instance, that the IJ's adverse credibility determination "was based on various discrepancies between [Kuidja's] testimony and her written documentation." The IJ painstakingly analyzed Kuidja's testimony, explaining why she was not credible. Kuidja acknowledges various "inconsistences" in her testimony but argues that these were "clearly reconciled." Pet'r Br. 16–17. Kuidja fails to demonstrate that the IJ's credibility finding was erroneous. We have thoroughly reviewed the administrative record, including Kuidja's testimony, and we cannot say that any reasonable adjudicator would be compelled to conclude contrary to the BIA. Because the record does not compel a contrary finding, we DENY Kuidja's petition.